**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RODNEY AUSTIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 05-CV-0593-CVE-PJC |
| | ) |
| EDWARD L. EVANS, Warden, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This is a proceeding on Petitioner's 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1). Petitioner is in custody of the Oklahoma Department of Corrections and appears in this matter *pro se*. Respondent filed a response (Dkt. # 11) to the petition and provided the state court records (Dkt. # 12) necessary for resolution of Petitioner's claims. Petitioner filed a reply (Dkt. # 15) to the response. For the reasons discussed below, the Court finds the petition should be denied.

### *BACKGROUND*

Between 3 and 4 a.m. on February 3, 2002, Jessica Daniels and Alicia Hope were traveling in Tulsa, Oklahoma, in Daniels' car. While stopped at a traffic light, a maroon colored automobile impacted the rear bumper of Daniels' car. Daniels and the driver of the maroon colored car inspected the bumper and observed only a broken tag light. Daniels told him not to worry about it. As Daniels and Hope proceeded on, the maroon car pulled up beside the passenger side of Daniels' car and the driver offered to pay for the broken tag light. Daniels initially declined the offer, but finally agreed. She pulled into a neighborhood. A man, later identified as Petitioner, got out of the maroon car, came to the driver's side, pulled out a silver handgun, placed the gun to Daniels' temple, and demanded that Daniels give him all of her money or he would blow her brains out. A second man wearing a ski mask who was a passenger in the maroon car came to the passenger side of

Daniels' car. As instructed, both women turned over their purses, got out of the car, and walked away. Once they reached a nearby house, they called police. Based on the tag number as reported by Daniels, the police were able to determine that the maroon automobile was registered to Tara Austin, Petitioner's sister. Both Daniels and Hope picked Petitioner's photo out of a photo lineup and identified him as the man with the silver handgun.

As a result of these events, Petitioner was charged with, *inter alia*, two (2) counts of robbery with a firearm in Tulsa County District Court, Case No. CF-2002-1235. Petitioner was tried by a jury and found to be guilty as charged. At trial, both Daniels and Hope testified and identified Petitioner, Rodney Austin, with 100 % certainty as the man who held a handgun to Daniels' temple and demanded money. Petitioner received sentences of thirty-nine (39) years and eight (8) months imprisonment and a fine of $10,000 on each count, with the sentences to run consecutively. Petitioner was represented at trial by attorney Jack Winn.

Petitioner appealed to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by attorney Danny G. Lohmann. He raised three (3) claims as follows:

> Proposition 1: Mr. Austin received ineffective assistance of counsel because a conflict of interest existed between Mr. Austin and his trial counsel.
>
> Proposition 2: Mr. Austin was denied a fair trial and sentencing because of the egregious conduct of the prosecutor.
>
> Proposition 3: The sentence imposed was so disproportionate and excessive under the circumstances of this case that it should shock the conscience of this Court.

(Dkt. # 12, Ex. 1). On March 11, 2004, in Case No. F-2003-20, the OCCA entered its unpublished summary opinion affirming the Judgment and Sentence of the trial court. (Dkt. # 12, Ex. 3).

On May 12, 2005, Petitioner filed a *pro se* application for post-conviction relief in the state district court. See Dkt. # 12, Ex. 4. He asserted the following claims:

1. Petitioner received ineffective assistance of appellate counsel in his direct appeal in violation of Sixth and Fourteenth Amendments
   A. Petitioner's initial arrest for the charges stated in CF-02-1040 was without probable cause.
   B. The charges in CF-02-1235 for which Petitioner was convicted were founded on evidence from an illegal arrest and therefore are in violation of the Fourth Amendment of the Constitution.
   C. Petitioner establishes his appellate counsel's ineffectiveness for omitting his Fourth Amendment claim on his direct appeal in CF-02-1235.

2. Petitioner received ineffective assistance of appellate counsel in his direct appeal in violation of Sixth and Fourteenth Amendments.
   A. Mr. Austin received ineffective assistance of counsel because a conflict of interest existed between Mr. Austin and his trial attorney.

3. Petitioner requests an evidentiary hearing when there exist material issues of fact outside the record.

4. Petitioner asks this court to liberally construe his Post-Conviction-Relief application for relief in CF-02-1235.

(Dkt. # 12, Ex. 4). By order filed June 20, 2005 (Dkt. # 12, Ex. 5), the state district court denied post-conviction relief. Petitioner appealed and by order filed September 23, 2005, in Case No. PC-2005-656, the OCCA affirmed the denial of post-conviction relief. See Dkt. # 12, Ex. 7.

On October 15, 2005, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). In his petition, Petitioner raises five (5) grounds of error, as follows:

Ground 1: Petitioner was denied effective assistance of counsel on his direct appeal, in violation of his 6th and 14th Amendment rights [for failing to challenge validity of photo used for lineup identification].

Ground 2: Petitioner was denied effective assistance of counsel on his direct appeal, in violation of his 6th and 14th Amendment rights [for inadequately raising issue of trial counsel's conflict of interest].

Ground 3: Petitioner received ineffective assistance of counsel because a conflict of interest existed between petitioner and his trial attorney.

Ground 4: Petitioner was denied a fair trial and sentencing because of the egregious conduct of the prosecutor.

3

>    Ground 5:    The sentence imposed was so disproportionate and excessive under the circumstances of this case that it should shock the conscience of this court.

(Dkt. # 1). In response to the petition, Respondent asserts that habeas corpus relief is either not cognizable or not warranted under the 28 U.S.C. § 2254(d) standard. See Dkt. # 11. Respondent has provided copies of the trial transcripts and the state court record for this case. See Dkt. # 12.

## *ANALYSIS*

### A.    Exhaustion/Evidentiary Hearing

The Court finds that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied in this case because Petitioner fairly presented all claims to the OCCA on either direct or post-conviction appeal. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

### B.    Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue

made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the OCCA adjudicated each of Petitioner's grounds 3, 4, and 5 on direct appeal and grounds 1 and 2 on post-conviction appeal. Therefore, to the extent Petitioner's claims are cognizable in a federal habeas corpus proceeding, those claims shall be reviewed pursuant to § 2254(d).

### *1. Ineffective assistance of appellate counsel (grounds 1 and 2)*

As his first and second propositions of error, Petitioner asserts he was denied the effective assistance of appellate counsel. He first claims that appellate counsel provided ineffective assistance in failing to raise a claim challenging the procedures used to obtain his identification from photo lineups. He also alleges that appellate counsel failed to raise adequately his claim that his trial counsel had a conflict of interest. In affirming the state district court's denial of post-conviction relief, the OCCA rejected Petitioner's claims of ineffective assistance of appellate counsel as follows:

> Petitioner admits in his application filed with this Court that he has no proof that the picture taken of him in the photo lineup in Case No. CF-2002-1040 was shown to witnesses in Case No. CF-2002-1235 and therefore is unable to support his claim that this photo was used to facilitate his alleged illegal arrest and the filing of charges in Case No. CF-2002-1235. Moreover, the record presented in this case contains no information supporting Petitioner's claims that his charges were dismissed in Case No. CF-2002-1040, or that the basis of that dismissal was because of an alleged illegal arrest. Finally, Petitioner is unable to present this Court with any supporting authority for his claim that his photo lineup picture constitutes "evidence" which should be suppressed to prevent his future arrest. With regard to Petitioner's claim of ineffective assistance of appellate counsel, the standard to be used in evaluating appellate counsel's performance is determined under the general principles enumerated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984). Petitioner must show that counsel's performance was deficient and that the deficiency prejudiced him. We find nothing

5

>in the appeal record presented to this Court indicating that Petitioner's representation on direct appeal was deficient.

(Dkt. # 12, Ex. 7). Although the OCCA affirmed the district court's denial of post-conviction relief, the OCCA did not provide a specific analysis of Petitioner's claim of ineffective assistance of appellate counsel for failing to raise adequately his conflict of interest claim. See id.

Petitioner is not entitled to relief on his claims of ineffective assistance of appellate counsel unless he establishes that the OCCA's adjudication of the claims, as raised on post-conviction appeal, was an unreasonable application of federal law as determined by the United States Supreme Court. The applicable standard was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The Strickland test requires a showing of both deficient performance by counsel and prejudice to petitioner as a result of the deficient performance. Id. at 687. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing United States v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995)). If the issue has merit, the Court then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. Hawkins, 185 F.3d at 1152; see also Cook, 45 F.3d at 394. The relevant questions for assessing a petitioner's claim of ineffective assistance of appellate counsel are whether appellate counsel was "objectively unreasonable" in failing to raise the omitted claims on appeal and, if so, whether there is a "reasonable probability that, but for his counsel's unreasonable failure" to raise the claims, petitioner "would have prevailed

6

on his appeal." Neill, 278 F.3d at 1057 (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000) (applying Strickland, 466 U.S. at 687-91)).

Upon review of the record in this case, the Court finds that Petitioner has failed to establish that the OCCA's adjudication of the claims of ineffective assistance of appellate counsel was an unreasonable application of Strickland. First, as to Petitioner's challenge to the procedures used during the photo lineups, the Court finds Petitioner has failed to demonstrate entitlement to habeas corpus relief under § 2254(d). Petitioner claims that his photograph used in the photo lineups shown to the victims in CF-2002-1235, was "fruit of the poisonous tree" because it was taken as part of a police investigation for a series of armed robberies, including a charge of robbery with firearm filed in Tulsa County District Court, Case No. CF-2002-1040. That charge was ultimately dismissed at the conclusion of the preliminary hearing held in Case No. CF-2002-1040. See Dkt. # 15.[1] Petitioner states that "had it not been for his unlawful arrest of February 22nd, 2002, for the crime alleged against him in Case No. CF-2002-1040,[2] the police would not have obtained the photograph

---

[1] In reply to the State's response, see Dkt. # 15, Petitioner provides a copy of a "Supplemental Offense Report" prepared by Detective Bob Little of the Tulsa Police Department, and the transcript from the preliminary hearing held in Case No. CF-2002-1040. The supplemental report reflects Petitioner's suspected involvement in multiple robberies and sexual assaults occurring on February 18, 2002, or approximately two (2) weeks after the robberies giving rise to the convictions in Case No. CF-2002-1235. Petitioner relies on the report to support his claim that a photograph taken of him after his arrest as a result of the incidents occurring on February 18, 2002, was used in photo arrays shown to the robbery victims in Case No. CF-2002-1235, the underlying case for the instant habeas corpus action.

[2] The Court notes that Case No. CF-2002-1040 was not the only criminal case filed against Petitioner as a result of his arrest on February 22, 2002. He was also charged with robbery with a firearm (Counts 1 and 2), forcible sodomy (Count 3), and rape by instrumentation (Count 4), in Tulsa County District Court, Case No. CF-2002-1218. See www.oscn.net. In that case, Petitioner was convicted by a jury of all four counts.

7

that led to his subsequent identification by the complaining witnesses in the instant case and, ultimately, prosecution of the case." See Dkt. # 15 at 3.

Under the Fourth Amendment, evidence obtained from an unlawful search or seizure is generally subject to exclusion as "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 484-85, 488 (1963). The rule of exclusion is not a *per se* rule but depends on the circumstances and on whether those circumstances show sufficient attenuation from the constitutional violation that the subsequent evidence should be admitted. United States v. Beckwith, 22 F. Supp. 2d 1270, 1287 (D. Utah 1998). The proper inquiry is whether the evidence was obtained through exploitation of the primary illegality or instead by means sufficiently distinguishable so as to purge the evidence of its taint. Wong Sun, 371 U.S. at 487-88. In the instant case, the photograph of Petitioner used in the photo lineups itself was not admitted into evidence at the trial. Nor was evidence of the photo array. Thus, Petitioner's argument turns on the proposition that his counsel should have sought suppression of his identification because his photograph used in the lineup was "fruit of the poisonous tree" obtained following an illegal arrest.[3]

The Court finds that Petitioner has failed to present any evidence or argument suggesting that, had his attorney filed a motion to suppress, the victims' identification of Petitioner would have been suppressed due to an improper police procedure that tainted Petitioner's in-court identification. As a preliminary matter, Petitioner has presented nothing to suggest that his arrest preceding the dismissal of the charge(s) filed in CF-2002-1040 was illegal. Assuming for the sake of argument that the arrest giving rise to the charge(s) filed in CF-2002-1040 was illegal, the identification of

---

[3] Significantly, Petitioner does not challenge the reliability of either the pre-trial photo lineup identifications or the trial identifications.

Petitioner by the victims Daniels and Hope in Case No. CF-2002-1285 was not subject to suppression because it was sufficiently remote and attenuated from the illegal arrest to be free of the taint resulting from the illegal arrest. Wong Sun, 371 U.S. at 487-88; Brown v. Illinois, 422 U.S. 590, 603 (1975) (identifying three factors for evaluating attenuation). In United States v. Crews, 445 U.S. 463 (1980), the criminal defendant sought suppression of his identification by the robbery victim, arguing that because his arrest giving rise to the charge in that case was illegal, the in-court identification should be suppressed as "fruit of the poisonous tree." The Supreme Court rejected the claim, noting that a defendant can not claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. Id. at 474. This is true because a defendant "is not himself a suppressible 'fruit'" and cannot challenge his presence at trial on that basis. Id.

Furthermore, the Tenth Circuit has held that where the record establishes that in-court identifications of a defendant were independently valid, any error in failing to suppress a photographic array containing a photograph of the defendant obtained pursuant to an unrelated, illegal arrest was harmless. United States v. Slater, 692 F.2d 107, 108 (10th Cir. 1982) (relying on Crews, 445 U.S. 463 (1980)). The record in this case supports a determination that the victims' courtroom identifications were not unduly influenced by the pretrial identifications and were, therefore, independently valid. Factors to consider in making this determination include "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup

identification." United States v. Wade, 388 U.S. 218, 241 (1967). Daniels had several opportunities to view her assailant during the events of February 3, 2002: first, when she inspected her car for damage, next when the occupant of the maroon car pulled up beside her car to offer payment, and then when he held a gun to her head and threatened to blow her brains out. Hope also had opportunities to clearly view the assailant: first, when he pulled his car beside her window to offer payment, and then when he threatened Daniels with a gun. Both Daniels and Hope demonstrated high degrees of attention during the criminal episode: both recalled the tag number of the maroon car and both described the silver handgun used by the assailant. Less than four (4) weeks passed between the criminal episode and the victims' selection of Petitioner's photograph from the array, and only eight (8) months passed between the incident on February 3, 2002, and the jury trial held October 7-9, 2002. Lastly, neither Daniels nor Hope ever identified any other person as their assailant and both testified that they were 100 % certain that Petitioner was the man who robbed them at gunpoint. In light of these facts, the Court finds that the in-court identifications of Petitioner were independently valid. As a result, appellate counsel did not perform deficiently in omitting a challenge to the failure to suppress the identification of Petitioner from a photographic array because any error was harmless. Slater, 692 F.2d at 108. Accordingly, under § 2254(d), Petitioner is not entitled to habeas corpus relief on his first claim of ineffective assistance of appellate counsel.

As his second proposition of error, Petitioner claims that his appellate counsel provided ineffective assistance in failing to raise adequately a claim of ineffective assistance of trial counsel due to a conflict of interest. Although the OCCA did not specifically address this claim in its order affirming the denial of post-conviction relief, this Court finds the rejection of the ineffective assistance of appellate counsel claim is nonetheless entitled to deference under § 2254(d). Aycox

v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated." (emphasis in original)). The record reflects that Petitioner and his trial counsel, Jack Winn, did not get along. The trial court denied multiple motions to withdraw filed by Mr. Winn. Petitioner argued in his brief on direct appeal that his Sixth Amendment right to effective representation by counsel was violated by his trial counsel's conflict of interest. Specifically, Petitioner asserted on direct appeal that trial counsel failed to investigate Petitioner's defense, failed to file the appropriate notice in a timely manner, and failed to interview and present witnesses, resulting in prejudice to Petitioner. Appellate counsel argued that both prongs of the Strickland standard were satisfied. See Dkt. # 12, Ex. 1 at 10. In rejecting the claim on direct appeal, the OCCA cited Strickland, 466 U.S. at 684, and determined that "Appellant's counsel was not acting under any conflict of interest, and Appellant was not denied effective assistance of counsel." (Dkt. # 12, Ex. 3). In this habeas corpus case, Petitioner argues that appellate counsel provided ineffective assistance in failing to argue that under Holloway v. Arkansas, 435 U.S. 475, 487-91 (1978), prejudice is presumed as a result of the trial court's failure to inquire after he lodged a timely conflict objection.

The Court finds that Petitioner has failed to demonstrate that the OCCA's rejection of this claim on post-conviction appeal was contrary to or an unreasonable application of Supreme Court law as required by 28 U.S.C. § 2254(d). In order to establish a violation of the Sixth Amendment based on a conflict of interest, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Where the defendant makes a timely objection pointing out a conflict of interest, prejudice is presumed if the trial court fails to make an adequate inquiry into the situation

11

and take appropriate steps. Selsor v. Kaiser, 22 F.3d 1029, 1032-33 (10th Cir.1994) (citing Holloway, 435 U.S. at 484). "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests'. . . ." Strickland, 466 U.S. at 692 (quoting Cuyler, 446 U.S. at 350). The mere possibility of a conflict of interest "is insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350. More recently, the Supreme Court held that to demonstrate a Sixth Amendment violation where the trial court failed to inquire into potential conflict of interest about which it knew or reasonably should have known, the defendant had to establish that this conflict of interest adversely affected counsel's performance. Mickens v. Taylor, 535 U.S. 162 (2002) (capital case involving alleged conflict of interest resulting from defense attorney's representation of defendant's victim at time of murder).

The record reflects that Petitioner attempted to fire his attorney, Jack Winn, in open court on the first day of his jury trial. The trial court allowed Petitioner to explain why he wanted to fire Mr. Winn and allowed Mr. Winn to explain why he wanted to withdraw. See Dkt. # 12, Ex. 10. According to Mr. Winn, Petitioner's mother and sister had indicated he was fired and they were hiring another lawyer. Id. However, no other lawyer had appeared at the time of trial. Id. Mr. Winn also stated that "I also visited with him, and he is quite angry. Some of the things that I have learned through privileged communication I cannot go into, but I do not -- I do not think that I can represent him under the circumstances." Id. at 4. The trial court denied Mr. Winn's motion to withdraw and advised Petitioner as follows:

> [w]hen you tell me you are ready to give up your right to counsel and represent yourself or when you have another lawyer that's ready to go forward on your jury trial today, I'll be glad to consider allowing you to choose whether you wish to hire new counsel or not. But this matter has been set for jury trial for some time, and regardless of whatever dispute you may have with Mr. Winn, I don't think it rises to

12

> the level of the Court desiring to postpone the jury trial in this matter. I don't think it rises to the level of a due process violation.

Id. Following a recess, Mr. Winn advised the trial court judge that he wanted to "renew all of my objections and exceptions and especially being his lawyer. He has been arguing ever since he came in." See Dkt. # 12, Ex. 11 at 4. After hearing additional argument from Petitioner concerning his dissatisfaction with the representation provided by Mr. Winn, the trial court allowed Petitioner to proceed *pro se* with Mr. Winn appearing as standby counsel. Id. at 12-13. The trial proceedings continued with jury selection. After dismissing the jury pool for the evening recess, the trial court asked Petitioner if he had anything to place on the record before taking the evening recess. Id. at 56. Petitioner expressed concern that he had made a "drastic mistake" in deciding to represent himself. Id. The trial court agreed and advised Petitioner that "[i]f you decide that you want to change your mind or if you have an attorney that's ready to go forward in the case tomorrow or you wish Mr. Winn to go forward in the case, I'll require Mr. Winn to go forward in the case. However, you have waived your right to counsel, and I've accepted that waiver. And I'm ready for you to go forward with the matter tomorrow at 8:30, and we'll be off the record in this case." Id. at 56-57. The following morning, trial proceedings resumed. Mr. Winn advised the court that no other attorney was present to represent Petitioner. Id. at 57. Petitioner then advised the court that he did not want to represent himself. Id. The trial resumed with Mr. Winn, over his protestations, providing representation for Petitioner. Id. at 65.

Based on a careful review of the record in this case, the Court finds that Petitioner has failed to demonstrate that he received ineffective assistance of counsel based on a conflict of interest. Although the record reflects that Petitioner and his attorney did not like each other, Petitioner has failed to point to facts showing that an actual conflict of interest adversely affected his lawyer's

13

performance. Contrary to Petitioner's allegations, the trial court judge afforded Petitioner numerous opportunities to explain the bases for his dissatisfaction and for the existence of an alleged conflict of interest. Petitioner's complaints focused on his allegations that Mr. Winn was not prepared for trial. This Court has reviewed the trial transcripts. That record reflects that Mr. Winn was prepared and presented Petitioner's defense of misidentification. He called Petitioner's girlfriend, Corean Lee, as a witness for the defense. Ms. Lee testified that Petitioner was with her at the time of the robberies and that he could not have been involved in the incident. See Dkt. # 12, Ex. 12, Tr. Trans. Vol. II at 29. Petitioner also testified and denied involvement in the robberies. See id. at 55-56, 77. Mr. Winn thoroughly cross-examined the State's witnesses and attempted to call into question the victims' identification of Petitioner. See Dkt. # 12, Ex. 11, Tr. Trans. Vol. I at 168-76, 188-96. In spite of Mr. Winn's efforts, the jury believed the State's witnesses and found Petitioner guilty.

Because Petitioner has demonstrated neither an actual conflict on the part of his counsel nor any adverse effects of a potential conflict of interest, the Court concludes that Petitioner has not shown that his appellate counsel provided ineffective assistance in failing to cite Holloway v. Arkansas in support of the conflict of interest claim. In addition, none of Petitioner's arguments convinces the Court that the outcome of his appeal would have been different had appellate counsel argued the ineffective assistance of trial counsel claim differently. As a result, Petitioner has not satisfied the prejudice prong of the Strickland standard. The OCCA's rejection of this claim on post-conviction appeal was not contrary to or an unreasonable application of federal law as determined by Supreme Court. See 28 U.S.C. § 2254(d). Thus, Petitioner is not entitled to habeas corpus relief on this ground.

### *2. Trial counsel worked under a conflict of interest (ground 3)*

As his third proposition of error, Petitioner alleges that his trial counsel was unable to provide effective assistance due to a conflict of interest. Petitioner raised this claim on direct appeal. The OCCA cited Strickland v. Washington, 466 U.S. 668, 684 (1984), and rejected the claim on the merits. See Dkt. # 12, Ex. 3. In analyzing Petitioner's claim of ineffective assistance of appellate counsel above, this Court determined that because Petitioner has demonstrated neither an actual conflict on the part of his trial counsel nor any adverse effects of a potential conflict of interest, the underlying claim of ineffective assistance of trial counsel lacks merit. No further analysis is needed. Petitioner has not demonstrated that the OCCA's adjudication of this claim was contrary to or an unreasonable application of Supreme Court law. He is not entitled to habeas corpus relief on his ground 3 claim of ineffective assistance of trial counsel.

### *3. Prosecutorial misconduct (ground 4)*

As his fourth proposition of error, Petitioner claims that during closing argument, the prosecutor improperly attacked him and encouraged the jury to "send a message." See Dkt. # 1. Specifically, Petitioner complains of the following argument by the prosecutor:

> I would submit to you you [sic] send him a message about his conduct. Send him a message about his conduct towards Jessica and Alicia. You send him a message about his conduct in this courtroom to let him know what you think about his actions.

See Dkt. # 12, Ex. 11, Tr. Trans. at 231. Defense counsel lodged no objection to the prosecutor's remarks. On direct appeal, the OCCA cited Charm v. State, 924 P.2d 754, 770 (Okla. Crim. App. 1996), and determined that "the prosecutor's statement 'send him a message' was proper." (Dkt. # 12, Ex. 3).

15

Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Cummings v. Evans, 161 F.3d 610, 618 (10th Cir.1998). Inquiry into the fundamental fairness of a trial requires examination of the entire proceedings. Donnelly, 416 U.S. at 643. "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999). Asking a jury to help solve a problem in society by convicting the defendant is improper. See United States v. Taylor, 514 F.3d 1092, 1104 (10th Cir. 2008). Whether the misconduct requires reversal depends on whether "there is reason to believe that it influenced the jury's verdict." United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996) (internal quotations omitted). In making that determination, the Court must "consider the trial as a whole, including 'the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case.'" Id. (quoting United States v. Martinez-Nava, 838 F.2d 411, 416 (10th Cir. 1988)).

After reviewing the entire trial transcript, this Court finds that even if the remark were an improper appeal to societal alarm, Petitioner is not entitled to habeas corpus relief. "[A]n improper appeal to societal alarm typically does not amount to a denial of due process." Jones v. Gibson, 206 F.3d 946, 959 (10th Cir. 2000). Under Donnelly and Cummings, misconduct warrants reversal only if the action was so egregious that it rendered the entire trial unfair. See Donnelly, 416 U.S. at 642-48; Cummings, 161 F.3d at 618. After careful review of the trial transcript, the Court finds that the alleged misconduct by the prosecutor did not plausibly tip the scales in favor of the prosecution.

In light of the strength of the evidence presented in this case, the Court finds no reasonable probability that the verdict would have been different without the incident of alleged misconduct by the prosecutor and concludes that the proceedings against Petitioner were not rendered fundamentally unfair by prosecutorial misconduct. Pursuant to § 2254(d), habeas corpus relief on this claim shall be denied.

### *4. Excessive sentence (ground 5)*

As his fifth proposition of error, Petitioner alleges that his consecutive sentences of thirty-nine (39) years and eight (8) months imprisonment are excessive. On direct appeal, Petitioner acknowledged that the sentences were within the range of punishment provided by law, but argued that "the punishment does not bear a direct relationship to the nature and circumstances of the offense." See Dkt. # 12, Ex. 1 at 13. The OCCA rejected this claim on direct appeal, citing Rea v. State, 34 P.3d 148, 149 (Okla. Crim. App. 2001), and finding that "the sentence in this case does not shock this Court's conscience." (Dkt. # 12, Ex. 3).

The maximum sentence under Oklahoma law in effect at the time of Petitioner committed his crimes was life imprisonment. See Okla. Stat. tit. 21, § 801. Where the sentence imposed is within the maximum provided by law, as in this case, there is no basis for habeas relief. Cooper v. United States, 403 F.2d 71, 73 (10th Cir.1968). To the extent Petitioner alleges a violation of the Eighth Amendment's prohibition of cruel and unusual punishment as the basis for his claim, the Court finds that Petitioner is not entitled to relief because his sentence is not grossly disproportionate to the crimes he committed, robbery with a firearm. See Hawkins v. Hargett, 200 F.3d 1279, 1282 (10th Cir.1999); see also Rummel v. Estelle, 445 U.S. 263 (1980) (finding that a life sentence with the possibility of parole is not disproportionate for a three-time non-violent recidivist). The length

of Petitioner's sentence cannot be said to be unreasonable in light of the deferential standard that binds this Court's analysis. See Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003) (observing numerous impediments to challenging the length of a prison sentence under federal habeas review). A sentence violates the Eighth Amendment only if it is "grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21 (2003) (quoting Rummel, 445 U.S. at 271). But "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Lockyer, 538 U.S. at 77. This is not that case. The OCCA's decision was not an unreasonable application of the gross disproportionality test. Thus, Petitioner is not entitled to habeas corpus relief based on any claim that his sentence is constitutionally excessive.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus (Dkt. # 1) is **denied**. A separate judgment shall be entered in this matter.

**DATED** this 17th day of February, 2009.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT